# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the Matter of | : | Case No. 11-32886/JHW |
| James and Jacqueline P. Tarby | : | **OPINION** |
| Debtors | : | |

APPEARANCES:  Bruce H. Williams, Esq.
28 Tanner Street
Haddonfield, NJ 08033
Counsel for Debtors

Richard D. Del Monaco, Esq.
State of New Jersey, Division of Law
25 Market Street, P.O. Box 106
Trenton, NJ 08625-0106
Counsel for New Jersey Division of Taxation

> **FILED**
> JAMES J. WALDRON, CLERK
> April 20, 2012
> U.S. BANKRUPTCY COURT
> CAMDEN, NJ
> BY:  s/ Theresa O'Brien, Judicial
> Assistant to Chief Judge Wizmur

The debtors seek here to modify the classification of the tax claim held by the New Jersey Division of Taxation from a priority claim to a general unsecured claim.  The debtors contend that the income tax obligation at issue was due over three years prior to the filing of their current bankruptcy case, making the tax debt ineligible for priority status under 11 U.S.C. § 507(a)(8)(A)(i).  Because the opportunity of the Division to collect the tax under the three-year look-back provision was suspended for an extended period of time prior to the debtors' current bankruptcy filing, the debtors' motion is denied.

**FACTS AND PROCEDURAL HISTORY**

James and Jacqueline P. Tarby filed a voluntary Chapter 13 petition on July 30, 2011. On October 17, 2011, the New Jersey Division of Taxation (the "Division") filed a proof of claim for $7,075.70, to which the debtors filed an objection on October 20, 2011. The only portion of that claim still at issue is the classification of the debtors' tax liability for the year 2005. The amount of the Division's claim for 2005 taxes, $1,301.24, is not contested. The dispute centers around whether the Division's claim should be entitled to a priority under § 507(a)(8)(A)(i), which affords a priority status to tax debts that arise within three years before a bankruptcy filing. The Division contends that the three-year look-back period in this case was extended during the debtors' first bankruptcy case pursuant to the terms of the so-called "hanging paragraph" following § 507(a)(8)(G), while the debtors argue that the three-year period was not extended during the Chapter 13 phase of their earlier bankruptcy filing.

The debtors had filed a prior Chapter 7 petition on October 16, 2005. The tax debt in question was not included in the debtors' schedules at that time because the debtors' 2005 tax liability first came due post-petition, on April 15, 2006. The debtors received a Chapter 7 discharge and on May 3, 2006, their Chapter 7 bankruptcy was closed. On January 9, 2007, the debtors' case was reopened, their discharge vacated and their case converted to a Chapter 13 proceeding. The debtors' Chapter 13 plan was confirmed on May

2

23, 2007, and a modified plan was confirmed on March 26, 2009. The debtors' Chapter 13 was dismissed on April 5, 2010, and the case was closed on April 27, 2010. The designation of the Division's 2005 tax claim as a priority claim in the debtors' current case depends upon whether the Division was enjoined from collecting the tax claim during the Chapter 13 phase of the debtors' first case, and particularly after the confirmation of the debtors' Chapter 13 plan in that case.

## **DISCUSSION**

Section 507(a)(8)(A) provides that the following claim has priority status:

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition--

(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(A). The three-year look-back period may be extended under the unnumbered paragraph following § 507(a)(8) (the "hanging paragraph"), which states that:

An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax ... ; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

3

11 U.S.C. § 507(a)(8). See also In re Jones, 657 F.3d 921, 925 (9th Cir. 2011); Console v. Comm'r of Internal Revenue, 291 Fed. Appx. 234, 237-28 (11th Cir. 2008); In re Kolve, 459 B.R. 376, 378-79 (Bankr. W.D. Wis. 2011); In re Montgomery, 446 B.R. 475, 479-80 (Bankr. D. Kan. 2011); In re Abir, No. 08-8321-478, 2010 WL 421124, *3 (Bankr. E.D.N.Y. Feb. 1, 2010). In other words, if a governmental unit is enjoined from pursuing collection efforts for any amount of time after the debt becomes due, the look-back period is extended for that length of time, plus 90 days. See In re Kolve, 459 B.R. at 380.

The debtors argue that the look-back period cannot be extended to reflect the time during which the Chapter 13 phase of the debtors' prior bankruptcy was active because the debtors' 2005 tax obligation, which arose on April 15, 2006, after their first bankruptcy was filed, represented a post-petition claim and was thus not subject to the automatic stay while the Chapter 13 case was pending. However, the issue is not whether the claim of the Division was a post-petition claim in the first bankruptcy case. Rather, as the Division accurately reflects, the issue is whether the debtors' property was protected by the automatic stay from collection by a post-petition creditor during the debtors' Chapter 13 case, and even after the confirmation of their Chapter 13 plan. If so, then the application of the suspension period as contemplated by

the hanging paragraph would serve to designate the Division's tax claim as a priority claim under the facts in this case.[1]

The applicable provision governing the automatic stay, 11 U.S.C. § 362(a)(3), provides that the filing of a bankruptcy case operates as a stay of "any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate." Under § 362(c)(1), with certain exceptions, the stay of an act against property of the estate continues until such property is no longer property of the estate. 11 U.S.C. § 362(c). The question becomes whether the confirmation of the debtors' Chapter 13 plan in the debtors' first Chapter 13 filing converted estate property into property of the debtor, causing the automatic stay to terminate under § 362(c)(1).

Resolution of the issue of whether the debtors' property continues to be protected by the automatic stay as property of the estate, after the confirmation of their Chapter 13 plan, presents an apparent conflict between two statutes, 11 U.S.C. § 1306(a) and 11 U.S.C. § 1327(b). See, e.g., In re Jones, 657 F.3d at

---

[1] The total number of days between the date the 2005 tax was due (April 15, 2006) and this Chapter 13 filing (July 30, 2011) is 1,932 days. Subtracting the number of days in three years (1,095) from that number leaves 837 days. If the Division's collection efforts were suspended by the automatic stay during the debtors' first filing for more than 927 days (837 plus 90 days, as provided in the hanging paragraph), then the Division's 2005 tax claim is entitled to priority status. If the automatic stay remained in place during the entire Chapter 13 phase of the debtors' first filing, even through confirmation of the debtors' plan, then the Division's collection efforts were suspended for over 1,200 days (January 9, 2007 to April 27, 2010).

927-28; Barbosa v. Solomon, 235 F.3d 31, 35-37 (1st Cir. 2000).  See also Blanche D. Smith, Property of the Estate – To Be Or Not To Be ? That is the Question the Trustee Asks of Thee, Part 1, 21 AM.BANK.INST.J. 28 (Dec./Jan. 2003).  Section 1306(a) of the Code provides that property of the estate includes "all property of the kind specified in such section [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title, whichever occurs first."  11 U.S.C. § 1306(a).  The statute makes no distinction between property acquired before confirmation of a Chapter 13 plan and property acquired after confirmation.  All property acquired while the Chapter 13 case is pending is designated as property of the estate.  Yet, under § 1327(b), the event of the confirmation of the debtors' plan causes the "vesting" of estate property in the debtors.  That section provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."  11 U.S.C. § 1327(b).  The property vests "free and clear of any claim or interest of any creditor provided for by the plan," unless the plan or order confirming the plan states otherwise.  11 U.S.C. § 1327(c).  The "vesting" provision of section 1327(b) has caused many courts to conclude that at confirmation, property of the estate revests in the debtor, becoming property of the debtor and losing the protections afforded to property of the estate.  See, e.g., In re Jones, 657 F.3d at 927-28 (describing various interpretive approaches to sections 1306 and 1327).

To reconcile these two seemingly conflicting statutes, we start, as always, with the text. CSX Transp. Inc. v. Alabama Dept. of Rev., 131 S. Ct. 1101, 1107, 179 L.Ed.2d 37 (2011). As noted, section 1306(a), which designates all property acquired by the debtor post-petition as property of the estate, lists three specific events which would cause property acquired by the debtor during the case to lose its designation as such, including closure, dismissal or conversion, whichever occurs first. Confirmation of the debtor's plan is not listed as an event of transformation regarding the status of after-acquired property. "'If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision.'" In re Kolenda, 212 B.R. 851, 853 (W.D. Mich. 1997) (quoting In re Aneiro, 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987)). The only natural reading of this section is that all property acquired by the debtor after filing retains its status as property of the estate until closure, dismissal or conversion.

As to section 1327(b), the focus is necessarily on the impact of the use of the term "vest". There are several possible interpretations of the term "vests" as used in the phrase "the confirmation of a plan vests all of the property of the estate in the debtor." Of course, the term must mean more than mere possession of estate property throughout the case, since Chapter 13 already provides for continued possession by the debtor of all property of the estate. 11 U.S.C. § 1306(b). In the absence of a statutory definition, "'our starting

7

point is the ordinary meaning of the words used.  We refer to standard reference works such as legal and general dictionaries in order to ascertain the ordinary meaning of words.'" Pa., Dept. of Public Welfare v. U.S. Dept. of Health & Human Servs., 647 F.3d 506, 511 (3d Cir. 2011) (quoting United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008)).  The legal definition of the term "vest" provides several alternatives:

> **vest**, *vb* (15c) **1**. To confer ownership (of property) upon a person. **2**. To invest (a person) with the full title to property. **3**. To give (a person) an immediate, fixed right of present or future enjoyment.

Black's Law Dictionary 1699 (9th ed. 2009).

The last of these alternatives, "to give (a person) an immediate, fixed right of present or future enjoyment," offers the best opportunity to reconcile § 1306(a) with § 1327(b).  See Woodard v. Taco Bueno Restaurants, Inc., No. 4:05-CV-804-Y, 2006 WL 3542693, *9 (N.D. Tex. Dec. 8, 2006) (The term "vest", given its ordinary definition, means that at the time of confirmation, the debtor is given an immediate and fixed right to the future enjoyment of the assets in the bankruptcy estate, subject to the completion of his obligations under the plan.).[2]  Section 1327(b) must be read in the context of the section in which it appears.  Section 1327(a) binds the debtor and each creditor, whether or not the claim of each creditor is provided for by the plan, to the provisions of

---

[2] But see In re Jones, 657 F.3d at 928 (focusing on the first two definitions); In re Mullins, No. 2:00-0571, 2009 WL 3160361, *5 (S.D.W.Va. Sep. 30, 2009) (discounting the use of the third definition as "not the preferred meaning now ascribed to the term 'vest' by the publication's editors").

8

a confirmed plan. Section 1327(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c). Read together, through the prism of the selected definition noted above, § 1327(b) provides that when a debtor's plan is confirmed, the rights of the debtor to property of the estate are immediate, subject to the provisions of the plan, in a manner that binds the debtor and all of the debtor's creditors. As well, the debtor has a fixed right of future enjoyment of the property which will be free and clear of the claims or interests of any creditor provided for by the plan, upon the debtor's successful satisfaction of the plan provisions, at which point the debtor will be entitled to a discharge under 11 U.S.C. § 1328. In re Kolenda, 212 B.R. 851, 854 (W.D. Mich. 1997) ("One could understand the term ["vest"] to return to the debtor something more than possession – i.e., full ownership rights in the property except vis-à-vis the interest of the estate in fulfilling the plan.").

The reconciliation of sections 1306 and 1327(b) leads me to conclude that in a Chapter 13 plan, property of the estate retains its status as such, even through confirmation of the debtor's Chapter 13 plan, until dismissal, closure or conversion of the case, as § 1306(a) provides. At confirmation, the "vesting" of property of the estate in the debtor, as provided in § 1327(b), means that the debtor's rights and interest in the property become fixed as of

the confirmation of the plan, and are effected when the provisions of the debtor's Chapter 13 plan are satisfied. This interpretive approach recognizes that the debtor retains possession of all property of the estate, except as otherwise provided for in the debtor's confirmed plan or the order confirming the plan, see 11 U.S.C. § 1306(b), and that upon confirmation, the debtor is obligated to make such payments from property of the estate as are provided for in the plan, see 11 U.S.C. § 1325. The act of confirmation "vests" all of the property of the estate in the debtor to allow the debtor to take the necessary steps to comply with the confirmed plan. 11 U.S.C. § 1327(b). The statute does not state that the event of confirmation changes the characterization of the property from property of the estate into property of the debtor. Instead, it merely confirms the debtor's ability to utilize property of the estate, notwithstanding that designation, in satisfaction of the debtor's obligations under the confirmed plan. As property of the estate, the debtor's resources necessary to consummate the plan remain protected by the automatic stay. 11 U.S.C. § 362(c). The property that vests in the debtor pursuant to section 1327 is free and clear upon the debtor's completion of the confirmed plan and upon the debtor's receipt of a Chapter 13 discharge.

This interpretation not only finds textual support, but is also compatible with the framework and purpose of a Chapter 13 case. Cf. In re Philadelphia Newspapers, LLC, 599 F.3d 298, 331 (3d Cir. 2010) (individual provisions should be viewed as part of the entire Code); First Merchants Accept. Corp. v.

J.C. Bradford & Co., 198 F.3d 394, 402 (3d Cir. 1999). The United States Supreme Court has described the Chapter 13 framework as allowing individual debtors to:

> obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court. Section 1322 sets forth the elements of a confirmable Chapter 13 plan. The plan must provide, inter alia, for the submission of a portion of the debtor's future earnings and income to the control of a trustee and for supervised payments to creditors over a period not exceeding five years. See 11 U.S.C. §§ 1322(a)(1) and 1322(c).

Nobelman v. American Saving Bank, 508 U.S. 324, 327, 113 S. Ct. 2106, 2109, 124 L.Ed.2d 228 (1993). The debtor remains in possession of all property of the estate throughout the case, except as provided for in a confirmed plan or order confirming a plan. 11 U.S.C. § 1306(c). The debtor may retain his assets, free and clear of creditors' claims, if the plan is successfully completed, whereupon the debtor obtains a discharge of all debts provided for by the plan, with certain exceptions. 11 U.S.C. § 1328(a).

Most fundamentally, in a Chapter 13 case, the debtor is required to make monthly payments as proposed by his Chapter 13 plan to the trustee. 11 U.S.C. § 1326(a). The debtor's income and assets acquired after the filing, and after confirmation of the debtor's Chapter 13 plan, act in most, if not all, Chapter 13 cases, as the source of payment for creditors during the Chapter 13 case. Therefore, the continued status of the debtor's post-petition income and assets as property of the estate, protected by the automatic stay, is

fundamental to the design of the statute.  Without that protection, both debtors and pre-petition creditors are at risk.  If a debtor's post-petition and post-confirmation income and assets are vulnerable to the claims of post-petition creditors, who need not seek relief from the automatic stay in order to pursue collection efforts against that income or assets, the debtor's opportunity to meet his Chapter 13 obligations will be severely compromised, particularly in light of the fact that the event of confirmation customarily occurs at the beginning of a Chapter 13 case.  11 U.S.C. § 1324(b).[3]  For instance, the debtor's wages may be attached, leaving insufficient funds to meet the debtor's plan obligations.  Or a creditor may levy on a vehicle owned by the debtor at the time of filing which is not treated in the debtor's Chapter 13 plan, thereby depriving the debtor of his critical transportation needs to continue to earn an income.  The avoidance of these types of scenarios explains the need for the insertion of § 1306(b) in Chapter 13 of the Bankruptcy Code, which provides that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."  11 U.S.C. § 1306(b).  See also 11 U.S.C. § 1207(b) (providing the same protections in Chapter 12).

---

[3] "The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a), unless the court determines that it would be in the best interests of the creditors and the estate to hold such hearing at an earlier date and there is no objection to such earlier date."  11 U.S.C. § 1324(b).

Other Chapter 13 provisions imply or assume the continued existence of the bankruptcy estate, and the protections afforded by the automatic stay, after confirmation. Section 1301 provides for a stay of action against codebtors, which does not expire until the debtor's Chapter 13 "case is closed, dismissed, or converted." 11 U.S.C. § 1301(a)(2). There is no mention of the confirmation of the debtor's plan. If the vesting of property at confirmation means that such property loses its protections at confirmation, when it became property of the debtor, then a codebtor would be afforded greater protection than the debtor from the claims of creditors throughout the Chapter 13 case.

A Chapter 13 debtor who operates a business must file periodic reports of the operation of such business with the court and the United States Trustee throughout the case, signifying accountability to the creditor body for property of the estate until the case is closed. 11 U.S.C. § 1304(c) and 11 U.S.C. § 704(a)(8). And at the end of each case, the Chapter 13 Trustee must "make a final report and file a final account of the administration of the estate with the court and with the United States trustee," 11 U.S.C. § 704(a)(9), signifying that the estate survives until the end of the case. 11 U.S.C. § 1302(b)(1).

In section 1322, the debtor is required to "provide for the submission of all or such portion of future earnings or other future income of the debtor . . . as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). This obligation to submit future income to the plan continues until the plan has

13

been consummated, providing further support for the proposition that post-petition earnings remain property of the estate, even through confirmation. See 11 U.S.C. § 1306(a)(2). Similarly, a plan is not confirmable unless unsecured creditors are paid in full or the plan includes all of the debtor's projected disposable income to be received during the applicable post confirmation period. 11 U.S.C. § 1325(b). After confirmation of a plan, "the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." 11 U.S.C. § 1325(c). These provisions are more consistent with the notion that post-confirmation income remains property of the bankruptcy estate.

As well, the Chapter 13 discharge achieved by the debtor after completing payments under the plan relieves the debtor of the legal obligation to repay "all debts provided for by the plan or disallowed under section 502 of this title", 11 U.S.C. § 1328, with certain exceptions. The impact of the discharge is cast in doubt if property of the estate becomes property of the debtor after confirmation of the plan, "free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c).

The modification provisions in section 1329 contemplate an adjustment of plan payments "[a]t any time after confirmation of the plan", suggesting yet again that the debtor's post-confirmation income and assets remain property of the estate. 11 U.S.C. § 1329(a). If a Chapter 13 debtor seeks to modify his

14

Chapter 13 plan after confirmation under § 1329, the debtor must comply with the "best interest of creditors" test under § 1325(a)(4). The "best interest of creditors" test requires creditors to receive a distribution under the plan that is at least as much as they would receive in a Chapter 7 liquidation. Obviously, in a Chapter 7 liquidation case, only property of the estate is liquidated. If the debtor's pre-confirmation property was no longer property of the estate after confirmation, the "best interest of creditors" test would be significantly altered, to the severe detriment of creditors.

Other Code provisions outside of the Chapter 13 framework, which are applicable to all Code chapters, offer further support for the continued status of property of the estate throughout the case. For example, if a debtor's Chapter 13 case converts to a Chapter 7 proceeding after confirmation in bad faith, property of the Chapter 7 estate "consist[s] of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2). After confirmation of a Chapter 13 plan, if all of the property of the estate became property of the debtor, or if the only property of the estate was property acquired thereafter, a Chapter 7 trustee would most likely be left with nothing to liquidate.

A second example arises under section 349, which provides that the dismissal of a case reinstates avoided transfers and voided liens, vacates turnover orders, and "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case

15

under this title." 11 U.S.C. § 349(b).  Upon the dismissal of a Chapter 13 case, property of the estate revests back in the prepetition entity "subject to all the encumbrances that existed prior to bankruptcy."  Carter v. U.S. Dept. of Housing and Urban Dev., 134 F.3d 376, 1998 WL 22032, *2 (9th Cir. 1998).  See also Security Bank of Marshalltown, Iowa v. Neiman, 1 F.3d 687, 691 (8th Cir. 1993); In re Parker, 400 B.R. 55, 60 (Bankr. E.D.Pa. 2009) ("property of a chapter 13 bankruptcy estate reverts back to the chapter 13 debtor unless the dismissal order provided otherwise").  If property of the estate became property of the debtor upon confirmation, section 349(b)(3) would be meaningless in a Chapter 13 case which was dismissed after confirmation, because property of the estate would have already become property of the debtor.

I readily acknowledge that the weight of authority does not support the conclusion that I reach here – that property of the estate remains so throughout the Chapter 13 case through confirmation, protected by the automatic stay.  Various interpretive approaches seeking to reconcile the apparently conflicting provisions in sections 1306 and 1327(b) have emerged among courts around the country.  These approaches are described succinctly in the following excerpt from the 9th Circuit decision in Jones:

> Three of the approaches are based on the principle that property of the estate revests in the debtor upon plan confirmation, unless the plan provides otherwise.  These approaches are known as the modified estate preservation, estate transformation, and estate termination approaches.  Under the modified estate preservation approach, estate property vests in the debtor upon plan confirmation, but property acquired after confirmation becomes

16

> property of the estate pursuant to § 1306(a). See Barbosa, 235 F.3d at 36–37. The estate transformation approach holds that § 1327(b) vests estate property in the debtor upon confirmation, retaining estate property only to the extent necessary to carry out the plan. See Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1339–40 (11th Cir.2000); Black v. U.S. Postal Serv. (In re Heath), 115 F.3d 521, 524 (7th Cir.1997). Finally, the estate termination approach, adopted by the bankruptcy court and the BAP in this case, holds that § 1327(b) revests all property of the estate in the debtor upon plan confirmation, and any property acquired after confirmation likewise vests in the debtor unless the plan or confirmation provides otherwise. See In re Petruccelli, 113 B.R. 5, 15 (Bankr.S.D.Cal.1990). Under any one of these approaches, estate property would have vested in Jones at plan confirmation, and that property would not have been subject to an automatic stay. See 11 U.S.C. §§ 362(a)(3), 362(a)(4).
>
> The fourth approach, known as the estate preservation approach, holds that although property of the estate "vests" in the debtor upon plan confirmation under § 1327(b), the property does not become property of the debtor. Instead, the estate remains fully intact and protected by the automatic stay until the case is closed, dismissed, or converted. See In re Aneiro, 72 B.R. 424, 429 (Bankr.S.D.Cal.1987).

In re Jones, 657 F.2d at 927-28. Expressly declining to adopt the last of these approaches, the estate preservation approach, the Jones court did not choose between the three other approaches. Rather, the court resolved that under any of the three variations, the government was not precluded from collecting its post-petition debt from property that revested in the debtor after confirmation.[4]

---

[4] See also In re Waldron, 536 F.3d 1239, 1243 (11th Cir. 2008)(concluding that while pre-confirmation property vests in the debtor at confirmation, post-confirmation property vests in the estate and is not reached by § 1327); Security Bank of Marshalltown, Iowa v. Neiman, 1 F.3d 687, 690-91 (8th Cir. 1993) (concluding that the bankruptcy estate continues to exist post confirmation even if property of the estate vests in the debtor); In re Jackson, 403 B.R. 95, 99-100 (Bankr. D.Idaho 2009) (describing the line of cases adopting the "estate replenishment" or "modified presentation" approach as the "growing majority").

The construct arrived at by the approaches generally adopted in <u>Jones</u> and other circuit cases all conclude that "at the very least, some estate property revests in the debtor at confirmation," <u>Jones</u>, 657 F.3d at 928, including all of the property acquired by the debtor prior to filing and prior to confirmation, meaning that such property is no longer considered to be property of the estate. Were we to accept that baseline, we would anticipate the following consequences, as eloquently projected by Judge Wedoff, all of which would disrupt a debtor's meaningful opportunity to reorganize in a Chapter 13 case.

> If all of the property of the estate is transferred to the debtor at confirmation, then the Chapter 13 debtor, just like a debtor in Chapter 11, would be "emancipated," and free to treat property of the estate as if no bankruptcy had ever occurred. Thus, after confirmation, a Chapter 13 debtor could (1) sell any unencumbered assets, (2) expend funds outside the ordinary course, (3) incur any kind of credit, including credit secured by unencumbered assets, and (4) pay legal fees to bankruptcy counsel - all without notice to any party involved in the bankruptcy and with no opportunity for a court hearing. If the debtor were operating a business, there would be no need to report on its operation. And finally, postpetition creditors . . . would be free to enforce claims against the debtor's property, again without any notice to parties involved in the bankruptcy. The effect of such a lack of protection is that, in the event of a postconfirmation conversion - whether or not the conversion is in good faith - there may be a substantial loss of the estate assets that were available to pay creditor claims at the time of plan confirmation.

<u>In re Fisher</u>, 198 B.R. 721, 731-32 (Bankr. N.D.Ill. 1996), <u>rev'd</u>, 203 B.R. 958 (N.D.Ill. 1997). A reading of the relevant statutes that is supported by the text, that advances the purposes of Chapter 13, that avoids the types of disruptive scenarios described above, and that protects debtors and creditors alike, is

18

preferred. Of course, a post-petition creditor is not without recourse against a debtor. Such a creditor may move for relief from the automatic stay to pursue its remedies.

## CONCLUSION

I conclude that the automatic stay remained in place after the confirmation of the debtors' Chapter 13 plan in the debtors' previous case, thereby suspending the opportunity of the Division to collect the tax due, and suspending the three-year look-back provision under 11 U.S.C. § 507(a)(8)(A)(i). The Division retains its priority status.[5] For these reasons, the debtors' motion seeking the reclassification of the debtors' tax liability for the year 2005 is denied.

The form of order submitted by the Division will be entered.

Dated: April 20, 2012

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT

---

[5] The argument offered by the debtors that the Division could have set off subsequent tax refunds after the debtors' first case was dismissed, and somehow lost its priority status or its claim because the set offs were not accomplished, is not supported in this record on any credible basis.